UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

JOSEPH ANTHONY DEMARIA,

Defendant.

**OPINION & ORDER**

17 Cr. 569 (ER)

Ramos, D.J.:

    This application comes before the Court in a time of national emergency. The novel coronavirus causing COVID-19 has sickened nearly 637,000 people in the United States and taken the lives of more than 28,000 since it appeared on our shores.[1] The economy of the United States has ground to a halt as its residents shelter in their homes and attempt to create enough distance to starve the virus of hosts. But for approximately 1.5 million people, that home is a crowded jail or prison.[2] Unsurprisingly, federal prisons have not avoided the outbreak: the Bureau of Prisons has reported the infection of 449 inmates and 280 staff.[3] Sixteen prisoners have died so far.[4]

    One federal prisoner, Joseph Demaria, petitions the Court to reduce his sentence and release him to home confinement now, before the virus sickens him, too. He is not the first to do so in this District, nor will he be the last. But this Court can only respond to this crisis using the tools given to it by Congress — tools that are few and limited compared to those given to the Bureau of Prisons. The tool Demaria seeks to invoke —

---

[1] *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. Times, https://www.nytimes.com/interactivef/2020/us/coronavirus-us-cases.html (last updated Apr. 16, 2020, 9:37 A.M.).

[2] Jennifer Bronson & E. Ann Carson, Bureau of Justice Statistics, Department of Justice, *Prisoners in 2017* (2019), http://www.bjs.gov/index.cfm?ty=pbdetail&iid=6546. Over 180,000 are in federal custody. *Id.*

[3] *BOP: COVID-19 Update*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus (last updated Apr. 15, 2020).

[4] *Id.*

the compassionate release provision of 18 U.S.C. § 3582(c) — is particularly inflexible in its allowance for when the Court may step in and how it may fashion any relief.

Accordingly, the Court must DENY Demaria's application without prejudice, granting him leave to renew his application when either his administrative remedies have been exhausted or 30 days have passed.  Simultaneously, the Court urges the Bureau of Prisons to expeditiously use the mechanisms given to it by Congress as recently as last month to ensure the safety of Demaria and his 180,000 fellow federal inmates, before the danger to them becomes irreversible.

## I.      BACKGROUND[5]

Joseph Demaria pleaded guilty in October 2018 to conspiring to commit wire fraud, in violation of 18 U.S.C. § 371.  He is currently serving his 36-month term of imprisonment at the Federal Medical Center, Lexington ("FMC Lexington") in Kentucky.  The Bureau of Prisons indicates his current release date is May 25, 2021.[6]  His attorney calculates that he will be transferred from FMC Lexington to a halfway house in November 2020 for his final six months of incarceration.

Demaria, 35 years old, suffers from a number of ailments, including chronic leg pain from a 2004 car accident, chronic back pain, and obesity.  Prison medical staff have diagnosed him as prediabetic, and he takes medication for bipolar disorder and anxiety.  In 2012, he suffered a heart attack.  Demaria has told his attorney that he lives in "an alley" of 24 prisoners with five assigned staff.  Seven prisoners shares a bathroom, and three share a cell.  He says that hygienic supplies, including soap, are in limited supply, and that he is put in close proximity to up to 100 people during mealtimes.  "[I]t is impossible to social distance," he claims.

---

[5] The facts recounted in this Part are taken from the parties' briefing for this motion, Docs. 218, 221, and 222.

[6] *Inmate Locator*, Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (click "Find My Name" tab; then search "Joseph Anthony Maria") (last visited Apr. 16, 2020).

The Government reports that FMC Lexington has yet to have an inmate or staff member test positive for COVID-19.  It further indicates that the Bureau of Prisons has taken a number of steps to reduce the impact of the pandemic:  visitors, attorneys, and contractors have been barred from Bureau facilities; inmate movement has been suspended; additional measures have been implemented "to maximize social distancing and limit group gatherings in [Bureau] facilities"; and both inmates and staff are screened for symptoms of COVID-19.  The Government claims that these are "extraordinarily protective measures."

Demaria, through his attorney, first petitioned the warden of FMC Lexington for his release under 18 U.S.C. § 3582(c) on March 30, 2020.  FMC Lexington responded by email the same day, acknowledging receipt and citing a recent memo from the Attorney General prioritizing the use of home confinement for eligible inmates.[7]  Demaria's attorney sent another message to the prison on April 3, asking about the status of Demaria's petition and informing the prison of the potential for this motion.  The prison responded three days later, indicating that it was "unable to provide an estimated timeline" for the processing of Demaria's request.

## II.   THE COMPASSIONATE RELEASE PROVISION

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  A court may reduce a prisoner's sentence when it finds there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur.  § 3582(c)(1)(A)(i).  First, and most simply, the Director of the Bureau of Prisons may move the court to release the

---

[7] Memorandum from Attorney General William Barr to the Director of the Bureau of Prisons re: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020), https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf.

prisoner. § 3582(c)(1)(A). Second, the prisoner himself may move the court, but only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

Once a petition for compassionate release is properly brought before a court, its discretion is guided by the policy statement within U.S. Sentencing Guidelines § 1B1.13. *See* § 3582(c)(1)(A). The Guidelines place two conditions on a determination of early release:

> (1) There are extraordinary and compelling reasons that warrant the reduction and
> (2) A situation where "the defendant is not a danger to the safety of any other person or to the community."

§ 1B1.13. The Guidelines include as an "extraordinary and compelling reasons" the existence of "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* cmt. 1(A)(ii)(I).

When determining whether a prisoner is a danger to the community, section 1B1.13 refers to 18 U.S.C. § 3142(g), which in turn lists the following factors to be considered:

> (1) the nature and circumstances of the offense charged . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . . and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

### III. THE MANDATORY ADMINISTRATIVE EXHAUSTION REQUIREMENT

Given that the Bureau of Prisons has yet to make a determination regarding Demaria's petition for compassionate release, Demaria does not argue that he has exhausted his administrative remedies. Nor have 30 days passed since he initially

4

submitted his petition on March 30, 2020; that date will be April 29.  Rather, he argues that the exceptional circumstances posed by the COVID-19 pandemic justify waiving the exhaustion requirements and ordering his immediate release.  Although the Court agrees that his risk of contracting the disease is significantly heightened because of his incarceration, it does not agree that it can waive the requirements mandated by statute in § 3582(c).

Although judge-made exhaustion requirements may be waived by a judge absent statutory authority, exhaustion requirements created by Congress almost always may not.  *See Ross v. Blake*, — F.3d —, 136 S. Ct. 1850, 1857 (2016).  This is because, when Congress acts, "Congress sets the rules — and courts have a role in creating exceptions only if Congress wants them to." *Id.*; *see also Bastek v. Fed. Crop Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text.").  Here, Congress has mandated that a prisoner may only bring a compassionate release motion on his own behalf after exhaustion or the passage of 30 days.  The plain language of the statute does not give this Court any flexibility in allowing waiver.

Demaria cites to a recent case from the Second Circuit, *Washington v. Barr*, to argue that the Court can override the statute's limits in three circumstances:  when exhaustion would be "futile", when the "administrative process would be incapable of granting relief," and when pursuing relief would "subject plaintiffs to undue prejudice." 925 F.3d 109, 118 (2d Cir. 2019).  And, to be sure, the panel in *Washington* does write, "Even where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." *Id.* (citing *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)).

But this language in *Washington* is *dicta*, and, in any event, contradicted by both *Madigan*, the Supreme Court case on which it relies, and *Ross*.  *Washington* created an administrative exhaustion requirement for suits brought under the Controlled Substances

Act, 21 U.S.C. § 801 *et seq.*; no Congressionally created requirements were at issue. *See* 925 F.3d at 115–18. *Madigan*, on which the panel relied, itself dealt with judicially created exhaustion requirements and quite clearly stated, "Where Congress specifically mandates, exhaustion is required." 503 U.S. at 144. Furthermore, *Ross*, construing the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), counsels that statutory exhaustion requirements "stand[] on a different footing" than judicially created ones. 136 S. Ct. at 1857.[8]

Accordingly, this Court joins the many other courts to have considered Section 3582(c)(1)(A)'s exhaustion requirement and found it to be mandatory. *See, e.g.*, *United States v. Raia*, — F.3d —, No. 20–1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (finding failure to exhaust remedies "presents a glaring roadblock foreclosing compassionate release"); *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032 (S.D.N.Y. Apr. 8, 2020)[9]; *United States v. Ramos*, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *1 (S.D.N.Y. Apr. 7, 2020); *United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020); *United States v. Arena*, No. 18 Cr. 14 (VM), 2020 U.S. Dist. LEXIS 60143, at *2 (S.D.N.Y. Apr. 6, 2020).

### IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Demaria's motion without prejudice. He may refile his motion once 30 days have passed from the date he submitted his petition to FMC Lexington or once he has exhausted his administrative remedies. He

---

[8] For these reasons, the Court respectfully believes that Judge Torres' reliance on *Washington* in *United States v. Perez* was incorrect. *See* — F. Supp. 3d —, No. 17 Cr. 513 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020). In any event, *Perez* is inapposite to this case: the prisoner there was due to be released before the expiration of the 30-day waiting period. *Id.* at *3. Demaria is not scheduled to be released until later this fall.

[9] The Court is additionally persuaded by Judge Furman's examination of waivable exhaustion requirements in the Social Security Act and Title VII of the Civil Rights Act and his finding that Section 3582(c)(1)(A)'s requirement is mandatory in contrast. *See Roberts*, 2020 WL 1700032, at *2; *see also id.* at n.2 (finding that a mandatory exhaustion requirement "makes good sense" in light of the Bureau of Prison's better ability to make an initial assessment of a prisoner's circumstances and suitability for early release).

is directed to submit with any such motion documentation detailing his medical condition and the risk such condition poses with respect to contracting and surviving COVID-19.

The Court must note, however, that the pandemic continues to rapidly evolve. Even though FMC Lexington is without detected cases of COIVD–19 at the time of this Opinion and Order, that situation could change with very little notice to the Government, to the Court, or, most consequentially, to Demaria. At this moment, only the Bureau of Prisons can take the steps necessary to protect Demaria and his fellow inmates through compassionate release, furloughs, *see Roberts*, 2020 WL 1700032, at *3, and other tools at its disposal. "Realistically, the best — perhaps the only — way to mitigate the damage and reduce the death toll of inmates from COVID-19 is to decrease the jail and prison population by releasing as many people as possible." *Id.* (internal quotation and alteration omitted). The Court urges the Bureau to quickly take those steps necessary to protect those under its care.

The Government is directed to serve a copy of this Opinion and Order on the Warden and Chief Counsel of FMC Lexington. The Clerk of Court is respectfully directed to terminate the motion, Doc. 217.

It is SO ORDERED.

Dated:  April 16, 2020
        New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.